```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------X
```

| | |
|---|---|
| CAROL KONITS, | MEMORANDUM<br>AND |
| Plaintiff, | ORDER |
| - against - | 01-CV-6763 (TCP) |
| VALLEY STREAM CENTRAL HIGH SCHOOL DISTRICT and its BOARD OF EDUCATION, ROBERT D. VALENTI, Individually and as District Superintendent, DEAN KARAHALIS, Individually and as District Coordinator, ROBERT KAUFOLD, Individually and as Principal Memorial Jr. High School, and GRACE KERR, Individually and as Chairperson, | |
| Defendants. | |

```
-----------------------------------X
```

PLATT, District Judge.

Defendants Valley Stream Central High School District ("District"), and its Board of Education ("Board"), Robert D. Valenti ("Valenti"), Dean Karahalis ("Karahalis"), Robert Kaufold ("Kaufold"), and Grace Kerr ("Kerr"), (collectively "Defendants"), move for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, following an Order of the Court of Appeals for the Second Circuit, dated January 7, 2005, remanding the matter for further consideration. For the following reasons, Defendants' motion for summary judgment is DENIED.

## **BACKGROUND**

The Court assumes familiarity with (i) the underlying facts of this long-running case allegedly involving First Amendment retaliation for the filing of an earlier retaliation lawsuit, for deprivation of rights under the Fifth and Fourteenth Amendments, and state law claims; and (ii) the previous decisions of this Court regarding these matters. See Konits v. Valley Stream Cent. High Sch. Dist., No. 96-5850 (E.D.N.Y. filed Mar. 26, 1998); Konits v. Valley Stream Cent. High Sch. Dist., No. 01-6763 (E.D.N.Y. Mar. 2, 2004).

On March 2, 2004, this Court granted summary judgment to Defendants on all claims after determining that Plaintiff, Carol Konits's ("Plaintiff" or "Konits"), speech was not a matter of public concern and thus was not entitled to First Amendment protection. Plaintiff appealed the dismissal of her First Amendment claim, and on January 7, 2005, the Second Circuit reversed and remanded the matter to this Court for "further proceedings on Konits's retaliation claim and for the related reconsideration of Konits's claim of municipal liability, the defense of qualified immunity and the exercise of supplemental jurisdiction over the state law claims." Konits v. Valley Stream Cent. High Sch. Dist., 394 F.3d 121, 126 (2d Cir. 2005). On September 8, 2005, the parties resubmitted memoranda to the Court concerning the matters

unresolved in the Second Circuit's decision.[1]

**DISCUSSION**

**I.     Applicable Legal Standards**

A motion for summary judgment may not be granted unless the court determines that there is "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The court must resolve all ambiguities and draw all inferences in favor of the non-moving party. Id. at 255; Castle Rock Entm't, Inc. v. Carol Publ'g Group, 150 F.3d 132, 137 (2d Cir. 1998). "A party opposing a properly brought motion for summary judgment bears the burden of going beyond the [specific] pleadings, and 'designating specific facts showing that there is a genuine issue for trial.'" Amnesty Am. v. Town of W. Hartford, 288 F.3d 467, 470 (2d Cir. 2002) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). If there is any evidence in the record from which a reasonable inference could be drawn in favor of the non-moving party on a material issue of fact, summary judgment is improper. Chambers v. TRM Copy Centers Corp., 43 F.3d 29, 37 (2d Cir. 1994).

---

[1] Although the parties submissions address Plaintiff's Equal Protection and Due Process claims, the portions of this Court's prior decision granting summary judgment in favor of Defendants, and consequently dismissing those claims, were not disturbed on appeal.

## II. First Amendment Retaliation Claim

In order to establish a claim of First Amendment retaliation under 42 U.S.C. §1983, it must be shown that: "(1) [the] speech addressed a matter of public concern, (2) [the plaintiff] suffered an adverse employment action, and (3) a causal connection existed between the speech and the adverse employment action, so that it can be said that the speech was a motivating factor in the determination." Cobb v. Pozzi, 2003 U.S. App. LEXIS 24885, at *29, *30 (2d Cir. Dec. 11, 2003) (quoting Mandell v. County of Suffolk, 316 F.3d 368, 382 (2d Cir. 2003) (internal citations and quotations omitted)). The "right to petition the government for redress of grievances, which is an assurance of a particular freedom of expression . . . is subject to the same constitutional analysis as the right to free speech." White Plains Towing Corp. v. Patterson, 991 F.2d 1049, 1059 (2d Cir. 1993) (quoting Wayte v. United States, 470 U.S. 598, 610 (1985)).

### A. Matter of Public Concern

Whether an employee's speech addresses a matter of public concern is a question of law, for the court to decide, by "taking into account the content, form and context of a given statement as revealed by the whole record." Lewis v. Cohen, 165 F.3d 154, 164 (2d Cir. 1999). As the Second Circuit has already addressed the first prong of the test for establishing a prima facie case of First Amendment retaliation and has resolved this question of law in favor of

Plaintiff, this Court need not further address this element.

    B.  Adverse Employment Action

With respect to the second prong of the test, Defendants' contend that Plaintiff has not established that she suffered a legally cognizable adverse employment action. Plaintiff argues that the Defendants' refusal to hire and/or promote Konits constitutes an adverse employment action. Plaintiff also describes a series of adverse actions which she attributes to her speech about gender discrimination.

In order to demonstrate adverse employment action, a plaintiff must prove that she suffered a "materially adverse change in the terms and conditions of employment." Torres v. Pisano, 116 F.3d 625, 640 (2d Cir. 1997); Richardson v. New York State Dept. of Corr. Servs., 180 F.3d 426, 446 (2d Cir. 1999). The Second Circuit has held that the classic adverse employment actions include "discharge, refusal to hire, refusal to promote, demotion, reduction in pay, and reprimand." Morris v. Lindau, 196 F.3d 102 (2d Cir. 1999). The Second Circuit has more recently articulated a "totality of the circumstances" test for situations that fall outside of the "classic" adverse employment actions. See Phillips v. Bowens, 278 F.3d 103 (2d Cir. 2002). In Phillips, the Court held that a series of "lesser actions" may also meet the adversity threshold if a plaintiff can show: "(1) using an objective standard; (2) the total circumstances of her working

environment changed to become unreasonably inferior and adverse when compared to a typical or normal, not ideal or model, workplace." Id. at 109.

Against the lesser standard articulated by the Court in Phillips, Plaintiff's claims survive the motion for summary judgment. Plaintiff has certainly raised an issue of fact as to whether the adverse actions Plaintiff alleges were more than "trivial," as Defendants assert, and did in fact constitute adverse employment actions.

Plaintiff makes specific allegations with respect to three different music positions for which she was not hired. After being interviewed by a committee that included former and current defendants, Karahalis and Kerr, Plaintiff was not hired for a band position in or around June of 2000. Instead, a "first year teacher without any teaching experience" was hired. (Konits Aff. at 31). In or around May of 2001, Plaintiff was not hired for an orchestra position which had become available. Plaintiff had been interviewed again by a committee that included Karahalis and Kerr; that committee recommended for the position an inexperienced and uncertified teacher, who was later terminated for a variety of reasons. Lastly, Plaintiff alleges credibly that she was denied the opportunity to interview for a vacant orchestra position in July of 2001. Plaintiff has also alleged adverse employment actions in that Defendants issued a poor annual evaluation of her job performance without any in-classroom observation,

denied Plaintiff school supplies and student desks, refused to allow Plaintiff access to her personnel file, reassigned her to menial, administrative tasks, and refused to allow her participation in "extra pay for extra service" activities.

A reasonable fact finder could certainly conclude on the record before the Court, that Defendants' proffered reasons for hiring other applicants for these positions are pretextual – or at a minimum, seriously in question given their assertion that Plaintiff "has received good and satisfactory evaluations throughout the litigation and her strengths as a teacher have been continually acknowledged by the District." Defs' Mem. Sum. J. at 10. Moreover, Defendants' attempts to defend the other actions which Plaintiff claims to be adverse appear disingenuous. Defendants ignore the totality of circumstances of Plaintiff's working environment and argue unconvincingly that "such limited and sporadic aggravation does not qualify as adverse employment action." Defs' Mem. Sum. J. at 10.

    C.    Causal Connection

In order to demonstrate the third factor of a First Amendment retaliation claim, Plaintiff must demonstrate that the protected speech was a "substantial motivating factor" in the adverse employment action. See Morris v. Landau, 19 F.3d 102, 110 (2d Cir. 1999); Deters v. Lafuente, 368 F.3d 185, 190 (2d Cir. 2004). Defendants argue that Plaintiff has failed to demonstrate that the

1996 lawsuit was a substantial motivating factor in the District's actions. Plaintiff argues that Defendants' actions are sufficient to create an issue of fact.

The Court agrees with Plaintiff that there are material issues of fact on this point. Defendants' actions in refusing to hire Konits for a number of music positions for which she was most certainly qualified and certified supports the inference that there was a causal connection between the Plaintiff's speech and the alleged adverse employment actions. Moreover, the deposition testimony of Margaret Silvera certainly bolsters Plaintiff's claim. Silvera testified that it was "generally known that Ms. Konits would not be given a performance position" and that defendant Karahalis had advised Silvera to "watch [your] back and to be careful" because "[Konits] will sabotage your program." (Silvera Aff. at 60, 66). It was also relayed to Silvera that she should not communicate with Konits because "she would hit me with a lawsuit." (Id. at 57). As such, Plaintiff has properly alleged a First Amendment retaliation claim.

II.     Municipal Liability

Having sufficiently alleged a possible constitutional injury, the Court now turns to whether Konits may properly bring her claim against the municipal defendants, the District and Board. In <u>Monell v. Dep't of Soc. Servs.</u>, 436 U.S. 658, 694 (1978), the Supreme Court established that a municipality may not be held liable under § 1983 for the constitutional torts of its employees by

virtue of respondeat superior. Instead, a municipality may only be found liable in one of three ways: (i) the municipal employee acted pursuant to a formal government policy or a standard operating procedure long accepted within the government entity (see Jett v. Dallas Indep. Sch. Dist, 491 U.S. 701, 737 (1989)); (ii) the municipal employee has policy making authority rendering his or her behavior an act of official government policy (see Pembaur v. City of Cincinnati, 475 U.S. 469, 480-81 (1986)); or (iii) an official with authority has ratified the unconstitutional actions of a subordinate, rendering such behavior official for liability purposes (see City of St. Louis v. Praprotnik, 485 U.S. 112, 127 (1988)).

In arguing that she has properly established municipal liability, Plaintiff's argument essentially melds together all three theories under which the District and Board may be held liable. While conclusory allegations by the plaintiff of a municipality's policy, practice, or custom are insufficient to establish a Monell claim, absent the production of evidence to support such allegations, see Carter v. City of New York, 1998 U.S. Dist. LEXIS 16350, at *16 (E.D.N.Y. Sept. 9, 1998), Plaintiff here has produced sufficient evidence in support of her claim. Although the Court is not convinced that the District or Board may be held liable under the first theory, that there was a formal policy or long-standing standard operating procedure directing that unqualified or uncertified applicants be hired over Konits, the Court is of the opinion that

Plaintiff's allegations may establish that the District's policy, practice, or custom did result in the alleged Constitutional violation.

The Supreme Court's decision in <u>Pembaur</u> makes clear that an official with policymaking authority may create official policy, even by rendering a single decision. As the Court stated therein, "it is plain that municipal liability may be imposed for a single decision by municipal policymakers under appropriate circumstances." <u>Pembaur</u>, 475 U.S. at 480. The Court further explained that the power to establish policy is not the exclusive province of the legislature and held that "Monell's language makes clear that it expressly envisioned other officials 'whose acts or edicts may fairly be said to represent official policy.'" <u>Id.</u> (quoting <u>Monell</u>, 436 U.S. at 694). Accordingly, even one decision by a school superintendent, if acting as a final policymaker, could render his or her decision district policy. Therefore, in order to determine if the District and Board may be held liable for the actions of individual officials, in this case the repeated refusal to hire Konits for positions for which she was certified and obviously qualified, we must determine whether Superintendent Valenti was a final policymaker, a question of State law. <u>Pembaur</u> at 483.

When examining an individual's status as a policymaker under <u>Monell</u>, "the official in question need not be a municipal policymaker for all purposes. Rather, with respect to the conduct challenged, he must be 'responsible

under state law for making policy in that area of the [municipality's] business,'" Jeffes v. Barnes, 208 F.3d 49, 57 (2d Cir. 2000) (quoting Praprotnik, 485 U.S. at 123); or must "have the power to make official policy on a particular issue," Id. at 57 (quotation omitted); or must "possess[] final authority to establish municipal policy with respect to the action ordered." Id. at 57 (quoting Pembaur, 475 U.S. at 481). Thus, the Court must determine whether Valenti was a policymaker for the subject matter involved in the action, namely the hiring of teachers for vacant positions. Id. (quoting McMillian v. Monroe County, Ala., 520 U.S. 781, 785 (1997)).

In arguing their respective positions on this issue, Plaintiff and Defendants seem to gloss over the concept of municipal liability and fail to address the nitty-gritty involved in deciding this issue. The Court's perusal of the New York Education Law ("Education Law"), however, has been instructive in determining whether for purposes of this action, Valenti, is a final policymaker. Under the Education Law, the Superintendent: is described as the chief executive officer of such board [of education] and the educational system and has a seat on the board of education and the right to speak on all matters before the board, but not to vote; is charged with the enforcement of all provisions of law and all rules and regulations relating to the management of the schools and other educational, social and recreational activities under the direction of the board of education; and

has supervision and direction of teachers. N.Y. Educ. Law §§ 2508, 2566. The board of education of a school district is required to create, abolish, maintain and consolidate such positions, divisions, boards or bureaus as, in its judgment, may be necessary for the proper and efficient administration of its work, and to appoint, <u>inter alia</u>, a superintendent of schools and teachers as the board shall determine necessary for the efficient management of the schools and other educational, social, recreational and business activities. N.Y. Educ. Law §§ 2503, 2554. Specifically, teachers and all other members of the teaching staff shall be appointed by the board of education, upon the recommendation of the superintendent of schools. N.Y. Educ. Law §§ 2509, 2573.

Thus, under New York law, for purposes of the hiring of teachers to fill vacant positions, the superintendent and the board of education have policy making authority. Similarly, the superintendent and the board of education may be viewed as having ratified the unconstitutional actions of their subordinates by acting on the recommendation of the hiring committee and appointing uncertified and lesser qualified teachers instead of Konits. Plaintiff asserts that she had met with Valenti and requested that Karahalis and Kerr be recused from the hiring committee because of the animus they had towards her following her first lawsuit. Cmplt. at ¶¶ 21, 23. As such, Valenti, and consequently the District and Board, were on notice that any decision by those individuals not to recommend Plaintiff

for a vacant position may have been viewed as retaliatory. There is further support for this contention given that at least one of the candidates that the hiring committee chose to recommend – a candidate to whom the District and Board gave their approval – was later found by the District and Board to be unfit for the position.[2] Nonetheless, Valenti refused to make changes to the hiring committee used to interview Plaintiff, and one could reasonably conclude, that he perpetuated the alleged retaliatory acts on behalf of the District and Board. Accordingly, the Court is of the opinion that the Plaintiff has sufficiently alleged a Monell claim.

### III. Qualified Immunity

The doctrine of qualified immunity shields government officials from civil liability as long "as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). The first task in considering a defendant's motion for summary judgment on the ground of qualified immunity is to determine whether the facts, and inferences drawn

---

[2] Plaintiff's memorandum of law at pages 6 and 7 makes reference to three individuals who were discharged for being unqualified and uncertified and refers the Court to Exhibit 22. Exhibit 22 concerns the discharge of Margaret Silvera only; thus, it is unclear to the Court whether there was more than one teacher who was discharged from a position for which Plaintiff had applied.

therefrom, taken in the light most favorable to the plaintiff, establish that the defendant's conduct violated a constitutional right. Saucier v. Katz, 533 U.S. 194, 201 (2001). This Court, having resolved the first inquiry in Plaintiff's favor, must next consider "whether, as a legal matter, the right that the defendant's conduct allegedly violates was a clearly established one, about which a reasonable person would have known." Gruenke v. Seip, 225 F.3d 290, 298 (3d Cir. 2000). Defendants are entitled to qualified immunity only if the constitutional or statutory violation alleged is not clearly established.

As a general matter, a right is "clearly established" when the contours of the right are "sufficiently clear that a reasonable official would understand that what he is doing violates that right." Saucier, 533 U.S. at 202. To be "clearly established" does not mean that "the very action in question has previously been held unlawful," Hope v. Pelzer, 536 U.S. 730, 739 (2002); rather it merely means that in light of preexisting law, the unlawfulness of the official's conduct was reasonably and objectively apparent. Wilson v. Layne, 526 U.S. 603, 615 (1999).

In the case before us, the illegality of the officials' actions was "sufficiently clear that they can fairly be said to have been on notice of the impropriety of their actions." Kinney v. Weaver, 367 F.3d 337, 372 (5th Cir. 2004). This is particularly true following the settlement in 1999 of the first

lawsuit filed by Plaintiff against the Defendants. From that point forward, Defendants should have been acutely aware of the impropriety of any retaliatory actions taken against Plaintiff.

Defendants may be hard pressed to demonstrate on this record that other officials of reasonable competence would have made the same choices in similar circumstances. See Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982); Weyant v. Okst, 101 F.3d 845, 857 (2d Cir. 1996). Defendants' claim that the members of the interview committee found Ms. Silvera more qualified based upon her ability to "relate to adolescent students" suggests possible age discrimination. Defs' Mem. Sum. J. at 20. In addition, Defendants' assertion that it was proper to appoint another individual to a vacant orchestra position because Plaintiff failed to appear for an interview is questionable. According to the undisputed time line, Defendant Karahalis attempted to communicate with Plaintiff at home on July 20, 2001 and left a voicemail message for Plaintiff on July 23, 2001.[3] On July 24, 2001, Plaintiff was notified by letter that an alternate candidate was chosen. (Exhibit BB). Defendants' may not reasonably claim that Plaintiff failed to appear for an interview when she was notified by voicemail the

---

[3] There is no indication in the record as to why Karahalis did not leave a voicemail message on July 20, 2001, the date he alleges he first attempted to contact Plaintiff regarding a vacant orchestra position, or why he did not attempt to contact Plaintiff between July 20, 2001 and July 23, 2001.

day before the "scheduled interview" and another candidate was hired either the same day as the scheduled interview or the following day unless there were conditions requiring such short notice.

**IV. State Law Claims**

With regard to the Plaintiff's State law claims, the Defendants argue the basis for dismissal on procedural grounds only and assert that the State law claims must all be dismissed because the Plaintiff "failed to comply with the mandates of General Municipal Law 50-h ("50-h")" in that she did not appear for questioning at a 50-h hearing prior to commencing the instant action. Defs' Mem. Sum. J. at 22-23. Plaintiff correctly argues that 50-h is inapplicable here.

In the instant action, an examination pursuant to 50-h is unnecessary because 50-h applies only to <u>tort</u> suits against municipalities. See <u>Bd. of Ed. Longwood Central Sch. Dist. v. Elite Assoc., Inc.</u>, 138 Misc. 2d 1038, 1041 (Sup. Ct. Suffolk Cty. 1988) ("this Court does not consider that section 50-h contemplates anything but tort claims"); <u>Benedict P. Cutrone v. Village Bd. of Trustees of the Vill. of Harrison</u>, 226 A.D.2d 459 (2d Dep't 1996) ("it is clear that General Municipal Law 50-h(5) . . . only applies to tort claims"). The Plaintiff's complaint alleges violations of the New York State Constitution, New York Executive, Human Rights and Civil Service laws, but it does not appear to allege any tort law claims.

Moreover, Defendant fails to acknowledge its own obligations under 50-h in light of Plaintiff's objection to the proposed venue of the 50-h hearing. Under General Municipal Law § 50-h(2), "If the place of examination is located outside the municipality against which the claim is made, the claimant may demand within ten days of such service, that the examination be held at a location within such municipality." Apparently, such a demand was made by Plaintiff and ignored by Defendants, who improperly proceeded with the hearing without Plaintiff and noted her default on the record. Defs' Mem. Sum. J. at 23.

Accordingly, because the Court finds the procedural defense offered by Defendants inapplicable to the Plaintiff's State law claims, the Court will exercise supplemental jurisdiction over the same.

## **CONCLUSION**

It is hereby ordered that Defendants' motion for summary judgment is DENIED in its entirety.


SO ORDERED.

                                                      s/s Thomas C. Platt
                                                    Thomas C. Platt, U.S.D.J.

Dated: Central Islip, New York
       January 28, 2006